UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **MICHAEL F. ROBINSON,** § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | Civil Action No. 9-cv-0999 |
| **OLD WORLD INDUSTRIES, INC., and** § | |
| **VENTUM ENERGY, L.P.,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment of Defendants Old World Industries, Inc. ("Old World") and Ventum Energy, L.P. ("Ventum") ("Defendants" collectively) (Doc. No. 13). After considering the Motion, all responses and replies thereto, and the applicable law, this Court concludes that the Motion should be granted in part and denied in part.

**I.   BACKGROUND**

Plaintiff Michael F. Robinson ("Plaintiff") is a resident of Fort Bend County, Texas. Plaintiff entered into an employment agreement with Defendants on April 14, 2004. (Pl. Org'l Pet. at 2; Defs. Mot. Ex. 2.) Pursuant to the agreement, Plaintiff assumed the position of Senior Vice President of Ventum, a Houston-based affiliate of Old World. (Defs. Mot., Doc. No. 13, at 3.) A few days after signing the employment letter, Plaintiff received an Employee Handbook ("Employee Handbook" or "Handbook"). (*Id*. at 4.) The Employee Handbook acknowledgment form signed by Plaintiff states: "[T]his handbook is not an employment contract. This means that you or the company may terminate our employment relationship at any time, with or without reason." (Defs. Mot. Ex. 3.)

1

Defendants terminated Plaintiff's employment in November 2007. (Pl. Org'l Pet at 2.) Defendants paid Plaintiff his base salary through November 8, 2007, and paid him for thirteen days of accrued but unused vacation time. (Defs. Mot. at 5.)

Plaintiff alleges that he was hired on an annual basis, and that Defendants therefore owe him his salary payment up to April 2008, which is the ending term of his annual employment. (Pl. Org'l Pet. at 2.) Plaintiff further avers that he was promised four weeks of vacation time per year, and that he was told that all of his unused vacation time from one year would carry over into the next. (*Id*. at 2-3.) Plaintiff brings this action for breach of contract to recover $67,083.36 in unpaid salary and $40,434.87 in payment for unused vacation days. Plaintiff also brings an action under the Federal Fair Credit Reporting Act. Defendants now move for summary judgment as to Plaintiff's claims for unpaid salary and for compensation for unused vacation days.

## II.    LEGAL STANDARD: SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Id*. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. UNPAID SALARY

Defendants argue that Plaintiff was employed on an at will basis, and that he could accordingly be terminated for any reason or no reason, with or without cause. Defendants conclude that Plaintiff is therefore entitled to no additional compensation beyond the period of his employment. In his response, while pointing out that either Texas or Illinois law might apply to the analysis, Plaintiff appears to concede that it can point to no facts that refute the contention that Plaintiff was an at will employee and could therefore be fired at any time. (Pl. Resp., Doc. No. 15, at 2.) Accordingly, this Court finds that Plaintiff was an at will employee who could be fired at any time, and awards summary judgment in favor of Defendants on the issue of whether Plaintiff is entitled to recover $67,083.36 in unpaid salary.

### IV. COMPENSATION FOR UNUSED VACATION

Defendants argue that Plaintiff is, as a matter of law, entitled to payment for no more than thirteen days of unused vacation, for which he was already compensated. Defendants argue that Plaintiff's claim for additional compensation is premised on two misconceptions: (1) that Plaintiff was entitled to four weeks of vacation per year, and (2)

that he was entitled to carry over all accrued but unused vacation from one year to the next.

Accordingly to Plaintiff, Mark Woods, Plaintiff's supervisor at Ventum, informed him through certain oral statements that he was entitled to four weeks of vacation per year and that all of his unused vacation from the prior year could be carried over into the next. (Michael Robinson Dep., Defs. Mot. Ex. B, 40:23-41:4, 42:2-43:14, Dec. 8, 2009.) In response to these assertions, Defendants point out that Mark Woods denies making these statements to Plaintiff. They also argue that, even if Plaintiff's assertion is taken as true for purposes of this Motion, these oral statements have no legal effect. Defendants' argument is premised on their contention that the Old World vacation policy is set forth in writing in both the employment offer letter signed by Plaintiff and the Employee Handbook given to him soon after. Defendants argue that any oral representations regarding the vacation policy would constitute parol evidence, which may not be considered by the Court when considering the written terms of the contract. Furthermore, Defendants argue that the promises contained in the statements alleged by Plaintiff could not be performed within one year, and must therefore be set forth in writing in order to be binding under the Statute of Frauds.

A.     **Matters of Law**[1]

---

[1] The parties point out there may be a legitimate question as to whether Texas or Illinois law applies to Plaintiff's at will employment status, because the employment letter states that Old World is an at will employer "as enforced by the State of Illinois." (Defs. Mot. Ex. 2.) However, it is not clear that Illinois has any connection to the issues related to other aspects of the employment agreement, as the letter in question was signed in Texas, the place of employment was Texas, and Plaintiff was actually employed by Ventum, which is a Houston-based company. Moreover, the laws of Texas and Illinois do not materially differ as to general principles of contract interpretation. As such, this Court will rely primarily on Texas law to analyze the issue of unused vacation days because it appears to be most applicable, although we will occasionally note congruous holdings by courts in Illinois.

In determining whether the alleged statements made by Woods can be legally recognized, this Court begins with the offer letter issued by Defendants and accepted by Plaintiff, which lays out the terms of his employment.[2] With regard to vacation, the letter states: "For the year 2004, you are entitled to 2 Personal Choice Holidays, and eligible to earn 5 vacation days and 3 sick days. For 2005 and beyond, vacation will be consistent with standard Old World policies." (Defs. Mot. Ex. 2.) The letter therefore clearly lays out the number of vacation days for which Plaintiff was eligible in 2004. The letter does not, however, go into detail as to what constitutes "standard Old World policies." Indeed, no reference is made to the Employee Handbook that was later given to Plaintiff, and nowhere does it state that the Handbook is the official authority on company policy regarding vacation days or anything else. As such, the meaning and scope of the term "standard Old World policies" is not clear from the face of the agreement.

Moreover, while the Employee Handbook describes, among other things, policies regarding vacations, it is clear that the Employee Handbook itself does not constitute a binding written agreement between the parties. The Handbook acknowledgement form that was signed by Plaintiff days after signing the offer letter explicitly states that the Handbook "is not an employment contract." (Defs. Mot. Ex. 3.) Indeed, in signing the acknowledgement form, Plaintiff did not agree to be bound by the terms within the Handbook, but rather acknowledged only that he had received a copy of the Handbook. *See generally Hicks v. Baylor University Medical Center*, 789 S.W.2d 299, 302 (Tex. App.—Dallas 1990, pet. denied) (explaining the limited effect of an employee handbook

---

[2] Although the offer letter states on its face that it is "not an employment contract," both parties treat it as an enforceable agreement in their briefs. Moreover, above the line where Plaintiff signed his name are the words "[t]he foregoing offer is accepted." (Defs. Mot. Ex. 2.) Therefore, because the letter contains both an offer an acceptance of specific terms, and there is clear consideration in the agreement, the Court will treat the letter as a binding written agreement.

on an employee's at will status where the handbook contained express disclaimers that it did not constitute an employment agreement); *compare Chauvin v. Tandy Corp.*, 984 F.2d 695, 696 (5th Cir. 1993) (noting that the facts showed that the employee understood the employment agreement and the employee handbook to embody an employment contract). Because there is no indication that the Handbook imposed legally binding obligations upon either party, the contents of the Handbook do not constitute a legally enforceable agreement.

These initial observations, therefore, suggest that the agreement at issue is ambiguous on its face. The question of whether a contract is ambiguous is a question of law for the Court to decide. *Addicks Services, Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (citations omitted); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980) (citations omitted). The primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *R & P Enters.*, 596 S.W.2d at 518-19 (citing *Citizens Nat'l Bank v. Tex. & P. Ry. Co.*, 150 S.W.2d 1003 (Tex. 1941)). If a contract is susceptible to two or more reasonable interpretations after applying these rules of construction, however, the contract is ambiguous. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)); *see also Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, --- N.E.2d ---, 2010 WL 1033448, at *11 (Ill. App. Ct. March 10, 2010). "When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *Coker v. Coker*, 650 S.W.2d 391,

394 (Tex. 1983) (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)); *see also Dowling v. Chicago Options Associates, Inc.*, 226 N.E.2d 1012, 1027 (Ill. 2007).

The agreement in this case provides no guidance as to whether "standard Old World Policies" refers only to the policies set forth in the Employee Handbook, or whether the term may include other sources of information, including oral representations made by senior Old World employees or the patterns and practice of the Human Resources Department. Because the agreement is open to multiple reasonable interpretations, summary judgment is inappropriate unless the factual evidence presented incontrovertibly establishes that the term "Old World policies" was intended to be limited to only those policies which are set forth in the Employee Handbook.[3]

### B. Matters of Fact/ Extrinsic Evidence

Having concluded that the construction of the term "standard Old World policies" is an issue of fact, the Court now examines the evidence presented to determine whether it appears that the Handbook was intended to be the only source of Old World polices, as the term is used in the parties' agreement. Defendants point out that Plaintiff signed the acknowledgment form indicating that he had in fact received the Handbook. However, the description of the Handbook as printed on this form provides no certainty as to whether the Handbook is the sole governing source of information regarding Old World

---

[3] Because the Court is attempting to construe the ambiguous term "Old World policies" as used in the agreement signed by both parties, it may refer to extrinsic evidence, including oral statements, to determine the intent of the parties. *See, e.g.*, *Addicks Services, Inc. v. GGP-Bridgeland*, *LP*, 596 F.3d 286, 294 (5th Cir. 2010) (noting that parol evidence may be used to ascertain the intent of the parties if the contract is found to be ambiguous); *ARM Properties Management Group v. RSUI Indem Co.*, 2008 WL 5973220, at *4 n.1 (W.D. Tex., Aug. 25, 2008) (noting that Texas law bars consideration of extrinsic oral or written statements for purposes of showing intent of contracting parties, unless the contract is found to be ambiguous); *see also Dowling*, 875 N.E.2d at 1027 (noting that parol evidence is admissible to ascertain what the parties intended in cases of ambiguous contracts). Furthermore, because this extrinsic evidence is being used to construe the terms of a written agreement signed by both parties, the Statute of Frauds is not implicated.

policies. The Handbook acknowledgement form does state that the information in it is meant to "acquaint [employees] with company policies that will answer many of your questions." (Defs. Mot. Ex. 3.) However, the book then goes on to state that "this handbook does not contain all the information you will need as an employee. You will receive other information through written notices as well as orally. . . . Company policies may also be changed at any time." (*Id.*) Thus, the form explicitly states that the information contained within the Handbook may be incomplete, and that other information may be provided in writing or orally. Although Defendants make much of the distinction between the terms "information" and "policy," the Court does not find this difference compelling. Immediately after explaining that the Handbook may not be a complete source of information, the acknowledgement form goes on to say that company policies can be changed at any time. Thus, the acknowledgement form itself conveys a strong sense that both the information and policies set forth in the Handbook could be incomplete.

Moreover, it appears from the evidence submitted by Defendants that Old Word did not consistently observe the policies as they are written within the Handbook. The vacation policy within the Handbook states that "A request for vacation deferral must be submitted on a written form . . . with appropriate management approval and returned to Human Resources by November 1 of the current vacation year showing the number of days to be deferred." (Defs. Mot. Ex. 10.) The policy further provides that "No more than five (5) days may be carried over." (*Id.*) Susan Byrne, the Human Resource Director for Old World, states in her declaration that during the years of Plaintiff's employment, the Human Resources Department reviewed the year-end vacation database and, where they

8

saw that vacation remained unused, they would automatically record unused vacation as carry over for use in the next year. (Susan Byrne Decl., Defs. Ex. E, Doc. No. 15-1, ¶ 5.) She further states that requests for over five days of deferred vacation time required approval from Human Resources. (*Id.*) Consistent with this declaration, the Employee Year End Information corresponding to Plaintiff shows that, for each year after 2005, Plaintiff received five days of unused vacation carried over from the previous year. (Defs. Mot. Ex. 11, Doc. No. 15-2.) However, that these days were carried over from the previous year *as a matter of course* is inconsistent with the policy set forth in the Handbook indicating that requests for vacation deferral had to be submitted in written form with management approval. There is no evidence that Plaintiff ever submitted a deferral request or received such approval from management; in fact, Ms. Byrne's declaration suggests that Plaintiff never submitted a request of any kind. (Byrne Decl. ¶ 5.) Indeed, had Plaintiff submitted a request asking that five or more days be deferred, then there would be no question as to the number of days of payment to which he is now entitled. But, the automatic transfer of five vacation days, absent a request, seems to contravene the policy as written in the Handbook. Moreover the vacation policy as written in the Handbook clearly states that "[n]o more than five (5) days [of vacation] may be carried over," whereas Ms. Byrne's Declaration indicates that deferral of more than five days of vacation was possible, though subject to approval by the Human Resources Department. (Byrne Decl. ¶ 5.)

      Thus, it appears that, in practice, the vacation policy as written in the Employee Handbook differed in material ways from the practice and procedures employed by the Old World Human Resources Department. These facts strongly suggests that "standard

Old World policies," as they pertain to vacation deferral, were not governed solely by the text of the Employee Handbook. This therefore presents an issue of fact as to whether the oral representation allegedly made by Mark Woods could have comprised part of Old World vacation policies as they pertained to Plaintiff. Therefore, summary judgment on the issue of whether Plaintiff received compensation for the appropriate number of unused vacation days is not proper in this case.

## V. CONCLUSION

Summary judgment in favor of Defendants on the issue of unpaid salary is hereby granted. Because the agreement signed by the parties is ambiguous as to what constitutes "standard Old World policies," and because the factual evidence presented does not establish that the parties intended the Handbook to be the only source of information regarding vacation policy, summary judgment in favor of Defendants on the issue of compensation for unused vacation days is denied. Defendants' Motion (Doc. No. 13) is accordingly **GRANTED IN PART AND DENIED IN PART**. The parties shall notify the Court as to the status of the pending Motion to Compel (Doc. No. 9) within ten (10) days of entry of this Order.

**IT IS SO ORDERED.**

**SIGNED** this 6th day of May, 2010

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE